152

5-3058                                    372 S. W. 2d 240

Opinion delivered November 4, 1963.

[Rehearing denied December 2, 1963.]

*Harper, Harper, Young & Durden,* for appellant.

*Jack Yates, White & Martin,* for appellee.

PAUL WARD, Associate Justice. The Workmen's Compensation Commission, in four separate cases, found appellees, Gerald Gordon, Robert Hyde, O. A. Richardson and James D. Wilson, *totally* and *permanently* disabled from silicosis contracted while working in a coal mine belonging to appellant—Peerless Coal Company. The award was affirmed by the circuit court, and this appeal follows. The four claims were consolidated for hearing at all stages on a joint record, and they are jointly here on appeal.

Appellant relies on two principal grounds for a reversal. *One,* the Commission's awards are not supported by substantial competent evidence. *Two,* the Commission acted without jurisdiction and in excess of its powers. For reasons hereafter set out we are unable to sustain appellant on either ground.

## ONE

The Commission held that all four of the claimants are *totally* and *permanently* disabled with silicosis and that each was last injuriously exposed to the hazards of the disease within the last three years while employed in appellant's mine. We do not understand appellant seriously challenges the finding that appellees are totally and permanently disabled, nor do we think it could do so. As to three of the claimants the evidence is beyond question, and, as to the other one, we find substantial evidence to support the finding of the Commission as to the extent of his disability.

Appellant does, however, ably and forcefully argue that there is no competent evidence to show its mine was ever a silica hazard. In support of this contention appellant introduced into evidence the results of three scientific tests performed in 1961. Rather than attempt to set out in detail the facts revealed by these tests, it may be conceded for the purpose of this opinion, that they show the silica content of the air taken from the mine to be harmless—that it would not induce silicosis. It appears to be appellant's contention that such scientific evidence overcomes the testimony introduced on behalf of claimants. In fact appellant contends there is no evidence to show there was (in the mine) silica dust capable of causing silicosis. This being true, says appellant, there is no substantial evidence in the record to sustain the finding of the Commission. For reasons presently set out, we are not convinced by the above argument.

In the first place we point out that the tests performed by appellant did not necessarily prove there was never at any time harmful silica dust in the mine. The air tested was taken in 1961 under conditions controlled by agents of appellant; it was near the entrance, and the ground had been dampened. These conditions bear little semblance to those under which appellees worked. It is undisputed that appellees worked for many years, often in a heavy dust, hundreds of feet underground. In the record there is testimony which, we think, amounts to substantial evidence to support the finding by the Com-

mission that there was silica dust present in the mine sufficient to create a silica hazard. A few instances of such testimony are briefly set out below.

(a) The State Board of Health's laboratory examined rock samples taken from subject mine in 1952 and found them to contain over 40% silicates.

(b) In the subject mine there is a layer of rock under the strata of coal. This rock is frequently blasted, causing a dense dust deep in the mine. It was often necessary to drill into the rock preparatory to blasting, and this also caused an accumulation of dust. To prevent an excess of rock dust, water was passed through the drill but sometimes the water hose broke while the drilling continued. At times the dust was so thick it was difficult to see clearly more than a few feet. Frequently it was necessary to put sand on the iron tracks used by the coal cars. Appellant admits silica is present in many rocks.

(c) The doctors first testified that claimants had silicosis, but later they admitted they were influenced by the knowledge that claimants had worked many years in coal mines. Apparently, had the doctors not had this information, they would have or might have diagnosed the disease as emphysema—a similar disease but one not covered by the act. In other words, it appears to us that the doctors were merely taking into consideration the case history of the patient as a usual aid to diagnosis.

(d) Finally, x-rays of claimants' lungs indicated the presence of silica.

For a reversal, appellant relies on the case of *Collier-Dunlap Coal Company* v. *Dickerson,* 218 Ark. 885, 239 S. W. 2d 9, pointing out what we there said:

"To affirm this case we would have to take judicial knowledge that the hazard of silicosis existed in appellant's mine. This Court will not take judicial knowledge of such alleged fact."

and further:

"If the rock, coal, or other elements in appellant's mine give off silica dust causing the hazard of silicosis to exist, then such fact can be proved without great difficulty. Without such fact being proved the evidence is not sufficient to warrant the making of an award."

In the cited case, however, we pointed out facts which differ from the facts in the case under consideration. We said: "There is no evidence in the record showing that any silica dust was ever in appellant's mine. In fact there is no evidence on the point one way or the other." We think, as previously pointed out, there is no such lack of evidence in the record in the case under consideration.

We are not convinced by appellant's contention that the case here is distinguishable from the case of *Peerless Coal Company* v. *Jones,* 219 Ark. 181, 240 S. W. 2d 647. There we sustained appellee's claim based on silicosis on even less direct proof than we have here. It is true that in the cited case there were no negative tests made of the air in the mines, but, as previously indicated, the tests in this case were not such as to preclude the possibility of silica dust in the mine at other times and locations.

From all the above we must conclude the record contains substantial evidence to sustain the Commission's findings. Also, as stated in the *Jones* case, *supra:*

"We have many times held that the Workmen's Compensation Law should be broadly and liberally construed, and that doubtful cases should be resolved in favor of the claimant."

## TWO

We see no merit in appellant's argument that the Commission acted without jurisdiction because claimants did not give appellant notice according to Ark. Stat. Ann. § 81-1314 (c) (1) (Repl. 1960) which provides:

"(1) Except as herein otherwise provided procedure with respect to notice of disability or death, as to the filing of claims and determination of claims shall be the same as in cases of accidental injury or death. Writ-

ten notice shall be given to the employer of an occupational disease by the employee, or someone on his behalf, within ninety (90) days after the first distinct manifestation thereof, and in the case of death from such an occupational disease, written notices of death shall also be given to the employer within ninety (90) days thereafter.''

Appellant says the record shows claimants failed to give it notice within the 90 days specified above. Conceding, for the purpose of this opinion, no proper notice was given, that fact does not bar appellees claim, because no objection was raised by appellant at or before the first hearing on their claims. See: *Gunn Distributing Company* v. *Talbert,* 230 Ark. 442, 323 S. W. 2d 434. It is true that the above case construed Ark. Stat. Ann. § 81-1317 which provides for notice in usual accidental injury cases. It reads: ''Notice of injury or death for which compensation is payable shall be given within sixty [60] days after the date of such injury or death (1) to the Commission and (2) to the employer.'' We know of no sound reason why the rule (regarding waiver of notice) applicable to occupational diseases should be different from that applicable to accidental injuries. In both instances the statute provides that notice *shall* be given. The only real differences are that § 81-1317 requires that notice be given within sixty days to both the Commission and the employer while § 81-1314 (c) (1) requires ninety days notice be given only to the employer. If, as held in the *Talbert* case, *supra,* notice can be waived in accidental injury cases we think it can, in the same manner, be waived in occupational disease cases.

In conformity with what has been said above, we affirm the judgments of the trial court from which comes this appeal.

Affirmed.